FREDRICK MFG. CO. v. DEVLIN et al.

(Circuit Court of Appeals, Third Circuit. February 1, 1904.)

No. 32.

1. SALES—CONTRACT—BREACH—MATERIALS—QUALITY—EVIDENCE.

Where, in an action for the price of bicycle handle bar stems, defendant contended that the stems furnished were malleable iron, and not steel, as ordered, and an expert testified that he could not say of his own knowledge that a particular test referred to was made from borings taken from articles submitted to him by the plaintiffs, a question as to what he would call certain material subjected to such test and returning certain results was properly refused.

2. SAME—REVIEW—PREJUDICE.

Where a witness answered a question, to which an objection had been sustained, favorably to defendant, and no motion was made to strike the answer out, the ruling will not be reviewed on defendant's appeal.

3. SAME—INDEFINITENESS.

A question put to a witness, "What did you do?" without calling the witness' attention to the subject of the inquiry, was objectionable as indefinite and unsuggestive.

4. SAME.

Where, in an action for the price of goods sold, a question asked of a witness, on redirect examination, as to the time when defendants first began to send out stems made from castings furnished by the plaintiffs, was properly excluded as repetition, error could not be predicated on such exclusion on the ground that it was expected to be proved by the question that the stems which had been so referred to were not defendants' stems, which was not supported by the record.

5. SAME—QUESTIONS—ANSWERS—RESPONSIVENESS.

Where a nonresponsive answer was given to a question objected to, and the court was not asked to strike the answer, the objection to the question cannot be reviewed on appeal.

6. SAME—WITNESSES—EXPERTS.

Where, in an action for the price of castings, the issue was not alone whether the castings were steel or malleable iron, but whether they were not also structurally imperfect, an expert witness was competent to give his opinion as to whether breakages for which defendants claimed damages might be due to the inexpedient use of castings instead of forgings, and not to inherent defects in the material used.

7. SAME—COUNTERCLAIM—TOOLS.

Where, in an action for the price of goods sold, defendants counterclaimed for the price of new tools required to be purchased by reason of alleged defects in the stems furnished, but there was no proof that the tools could not be used for any other purpose, defendants were not entitled to recover the cost of such tools.

8. SAME—STATUTES—NOTICE.

Under Prac. Act N. J. § 129 (2 Gen. St. p. 2555), requiring that, where damages are pleaded in recoupment, notice of the particulars of such defense shall be attached to the plea and filed therewith, the defendants were not entitled to recoup damages for the purchase of tools, made necessary by alleged defects in the materials purchased, in an action for the price thereof, where no notice of such defense had been given.

9. SAME—CONTRACT OF SALE—CONSTRUCTION—WARRANTY.

Where a buyer ordered 100,000 bicycle handle bar stem castings, as per sample submitted, to be made of the best grade of steel suitable for the purpose, and the seller agreed to furnish "100,000 handle bar stem castings to be made of steel," the seller only warranted that the character of the metal used should be steel, and not that it should be of the best grade or suitable for the purpose intended.

**10. SAME.**

Where plaintiffs, who were not manufacturers of bicycle appliances, but simply manufactured steel and iron castings, agreed to furnish defendants handle bar stem castings, as per sample, to be made of the best grade of steel suitable for the purpose, plaintiffs were not bound to exercise judgment in selecting such a grade of steel as in their opinion would be suitable, nor did they guaranty that steel of any grade would answer the purpose intended.

In Error to the Circuit Court of the United States for the District of New Jersey.

Edward Stetson Griffing, for plaintiffs in error.

Edward C. Perkins, for defendants in error.

Before ACHESON and DALLAS, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The plaintiffs sued in the court below for the price of certain steel castings furnished the defendants for the stems of bicycle handle bars. Two shipments were received and paid for, but the third was refused, on the ground that the accepted order, on which they were to be supplied, called for "the best grade of steel suitable for the purpose," while those furnished were not steel at all, but malleable iron, and were so defective, in addition, by reason of blowholes, as to be practically worthless. Suit having been brought, the defendants denied liability on these grounds, and also set up a claim for loss by the breakage of stems, by reason of their inferior and defective character and condition. The verdict of the jury favored the plaintiffs, and the court, on application, refused to disturb it. Much of the argument urged upon us here would be appropriate on the consideration of a rule for a new trial, but it has no place in this court, where we can only review and correct the errors, if any, committed by the trial judge in the course of the proceedings.

The assignments of error are numerous, but there are only a few that need to be noticed. The first is addressed to the refusal of the court to allow the following question to be put on cross-examination to Dr. Waller, an expert witness produced by the plaintiffs: "Suppose you had taken no physical tests and had a chemical test, showing that the combined carbon was .14, the graphitic carbon was .85, the phosphorus was .165, sulphur .035, and silicon .604; what material would you call it—steel or malleable iron?" Objection was made to this as not being the result of any of the analyses shown, and the court sustained it, saying: "You cannot use this test of November as a test made by the witness, when the witness says he does not consider that he can identify the material tested." To confirm this ruling the trial judge turned to the witness, and asked: "Can you say upon your own knowledge that the test of November was made from borings taken from articles submitted to you by the plaintiffs?" to which the witness replied, "I cannot." Not content with this result, and still seeking to maintain his position, counsel for defendants then asked: "Doctor, assuming that borings from this piece of metal, which was sent you by the plaintiffs in November, 1901, had been tested, and had shown, upon examination, that the combined carbon was .14

of one per cent.; graphite .85 of one per cent.; phosphorus .165 of one per cent.; sulphur .035 of one per cent.; and silicon .604 of one per cent.; what metal would you say it was—steel or malleable iron?" This was practically a repetition of that which had just been rejected, and could not be expected to receive any better treatment. It was not a hypothetical question put to the witness as an expert (to which the court had intimated that counsel was entitled), because it assumed, as before, the identity of the borings, which, in the opinion of the court, had not been satisfactorily established. It is true, with regard to both these questions, that an analysis, of the character mentioned, of borings which had been submitted to the witness, had been drawn out without objection by defendants' counsel on cross-examination; but while this may, to a certain extent, have put it in evidence, when its competency was challenged, as it was, for the purpose proposed, it could not be made use of in that way while the identity of that to which it related was in question. Issue will probably be taken with the suggestion that there was any doubt as to the identity of the material referred to, in view of the evidence on the subject to which our attention is called in the brief of counsel. But even if it be assumed that this evidence is before us, which we very much question, we must rely on the judgment of the trial judge with regard to it, rather than our own deduction from the references given us, which are not altogether clear, and about which we might easily be mistaken.

James R. Chisolm, a witness for the defendants, on redirect examination, was asked the question: "While you were selling handle bars for the Fredrick Manufacturing Company [defendants], made of steel forging stems, prior to placing this order, had you ever heard of a stem breaking?" This was objected to, and the court held it incompetent; but the witness, without regard to the ruling, answered, "I had not." The jury must have heard this, and, as there was no motion to strike it out or have them disregard it, the inquiry whether the court was right or wrong, in holding as it did, is of no practical consequence.

The question put to the witness Stoughton, "What did you do?" is so indefinite and unsuggestive that we are not prepared to say the court was in error in rejecting it. Standing by itself, as it does, with no enlightening context, it is meaningless; and it is not to be judged by what is now sought to be imported into it, which, if that were permitted, might be anything that the ingenuity of counsel could advance. Had a concrete question been asked, inquiring of the witness what he had done in the way of testing the fractured pieces of castings sent him, it would be different; and, except as it had already been gone into in his prior examination, we have no idea that the learned trial judge would have excluded it. But it is to be remembered that this was a matter on redirect examination, where only that was admissible which had not before been touched upon. The court is not to be convicted of error at that stage, unless it clearly appears that something both new and material was shut out.

No bill was sealed to the rejection of the question put to Craig; but passing that by, we fail to see how the defendants were injured.

This also was on redirect examination, and simply inquired as to the time when the defendants first began to send out stems made from castings furnished by the plaintiffs. But according to the testimony to which we have been freely referred in other matters—if we are permitted to examine it—the witness on cross-examination had already declared that they began to sell them in November, 1899, and continued to do so up to April, 1900. The question, therefore, was repetition. The suggestion now that it was expected to prove by it that the stems which had been so testified to were not Devlin stems has nothing in the record to sustain it. If it was in the mind of counsel it was not disclosed, and we cannot be expected to reverse on any such supposititious purpose.

The witness Souther was asked as an expert: "Assuming a bicycle stem to be made of the best grade of steel castings suitable for the purpose, of the size, shape, and style of the piece you have there, and to be finished in the manner shown in the other piece which is in your hand, would that be safe against breaking when in use as part of a bicycle handle bar?" This was objected to by the defendants as incompetent and immaterial, but the objection was overruled and the witness said: "I do not believe that can be answered—as to whether that would be safe—without qualifying it." He then went on to explain that, in the early days of bicycle manufacturing, castings were used in certain places on them, but, not proving satisfactory, forgings were substituted, and were continued in use until the prices of bicycles dropped, when manufacturers were forced back to castings for some parts, but with their weight considerably added to and their dimensions changed. It will be seen from this that no direct answer was given to the question objected to, nor any opinion, such as was sought to be elicited by it, expressed. The witness merely gave a narrative of the respective use of castings and forgings, which, if not relevant, the court should have been asked to strike out. It could not be regarded as coming in in answer to the question, over the objection lodged to it, so as to be covered by the bill sealed. With the question one way and the answer another, each must be judged by itself, and error cannot be assigned to the allowance of the one, even if objectionable, when it brought out nothing to which it was directed. It is true that later on in the examination the question in a modified form was renewed and answered; but, while the defendants again objected, no bill was sealed to its allowance, and we cannot regard the ruling on this question as brought within that which had gone before. But aside from these technicalities, why was not the question a proper one? The witness, as an expert, was competent to give his opinion, which went to the point whether the breakages which the defendants set up might be due, not to inherent defects, as contended by the defendants, but to the inexpedient use of castings instead of forgings, machined down, as they were, in the process of finishing. The issue was not alone whether the castings were steel or malleable iron, but whether they were not also structurally imperfect, and the testimony was relevant as bearing upon this.

In their thirteenth request the plaintiffs asked the court to charge that "the defendants are not entitled to damages on account of the

purchase of machinery or tools for use upon the goods furnished by plaintiffs." To this the court acceded, instructing the jury that, in case they came to consider the recoupment of damages claimed by the defendants, they were not to allow the item for new tools—some $700—for the reason, first, that it was not affirmatively shown that the tools could not be used for some other purpose, and, second and principally, because no notice of this item of claim was given by the defendants in their plea, as provided by the local statute. On both grounds this ruling must be sustained. In view of the express provisions of section 129 of the practice act of New Jersey (2 Gen. St. p. 2555), there is no room for the suggestion that particulars are only necessary where they are demanded. As said by Magie, J., in Bozarth v. Dudley, 44 N. J. Law, 304, 43 Am. Rep. 373: "Recoupment is permitted solely by the statute, * * * and notice of the particulars of such a defense is required to be annexed to the plea and filed therewith."

The plaintiffs, in their sixth point, requested instructions that they "did not warrant or agree that the goods ordered would answer the purpose to which the defendants intended to put them." This was properly affirmed. The defendants ordered "100,000 handle bar stem castings, as per sample submitted, to be made of the best grade of steel suitable for the purpose," and the acceptance of the plaintiffs was qualified: "100,000 handle bar stem castings to be made of steel." All that they could be held to guaranty by this was that the character of the metal should be steel, and that the castings, as such, should not be defective. If the defendants were not satisfied with the manifestly limited terms on which their order was taken, they should have called attention to it and endeavored to obtain better. Having signified their assent to the acceptance by receiving and paying for the first two shipments under it, the contract stands as so made. But even if there was a complete and unqualified agreement to the order as given, we should hesitate to hold the plaintiffs responsible for anything more than the condition and grade of the material furnished. They were not manufacturers of bicycle appliances, as were the defendants, but simply of steel and iron castings, and we cannot see that they undertook or were called upon to exercise judgment in selecting such a grade of steel as in their opinion would be suitable, much less to guaranty that steel of any grade would answer the intended purpose. The defendants claim that they were entitled to the best, excluding any discretion, and it is one of their chief complaints that they did not get it. The case, in this aspect, falls within the doctrine laid down in Seitz v. Refrigerating Company, 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, where it is held that "where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." In either view of the extent of the plaintiffs' contract, there was no ground for complaint with the instruction given.

The judgment is affirmed.