[No. 11232. *En Banc.* September 15, 1913.]

GEORGE PATRICK *et al.*, *Respondents*, v. GRANT SMITH *et al.*, *Appellants.*[1]

EXPLOSIVES—BLASTING—LIABILITY — ADJOINING LANDOWNERS—INJURY TO WELL—NEGLIGENCE. Contractors who set off an exceedingly large blast of powder, causing the earth for a considerable distance to shake violently, are liable to an adjoining owner, whose well was injured and water supply lost, without regard to their negligence in setting off the blast, although there was no physical invasion of the property.

SAME—DEFENSES. In such a case, it is no defense that the contractors were lawfully engaged in making a cut on the right of way, where it does not appear that the waters which fed the well were drained on or appeared in the right of way in consequence of the blast.

WATERS AND WATER COURSES—SUBTERRANEAN WATERS—CORRELATIVE RIGHTS. There are such correlative rights in percolating waters that one owner may not, by setting off an unusual blast of powder on his own land, destroy or injure the flow of the water in the well

[1]Reported in 134 Pac. 1076.

of an adjoining landowner; since each owner must make such reasonable use of percolating subterranean waters as not to unduly interfere with the rights of the other owners.

EXPLOSIVES—BLASTING—DAMAGES—INJURY TO WELL—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY. Where a blast of nearly three tons of powder displaced an enormous amount of rock and earth, and caused the earth to shake violently for a considerable distance, and threw a small house from its foundation a quarter of a mile distant, and experts were of the opinion that the blast opened a seam or seams in an impervious stratum of rock that had held the water, the jury is warranted in finding that the blast was the proximate cause of the loss of the water in a well situated on the hillside, above the blast, about 500 feet distant, the water in which receded seven feet within five hours after the blast.

EVIDENCE—EXPERTS—OPINIONS—HYPOTHETICAL QUESTIONS. In an action for damages for the loss of water in a well, caused by a heavy blast set off 500 feet distant, mining experts who had had experience and observation in the use of explosives in large quantities, may, in answer to hypothetical questions, express an opinion that the explosive caused the loss of the water.

APPEAL—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE. In an action for damages for the loss of water in a well, caused by a heavy blast, it is not prejudicial error to exclude evidence offered by the defendant to the effect that the plaintiff could obtain water from a public service corporation by extending a privately owned water main at an expense of $100, where the jury awarded only $250 damages, and the plaintiffs would have had to pay for the water for all time.

SAME. In such a case, it is not prejudicial error to exclude evidence that the plaintiff could have obtained the right to use water under a revocable license, in the absence of proof of the cost thereof.

SAME—HARMLESS ERROR—INSTRUCTIONS. In an action for damages for the loss of water in a well, it is not prejudicial error to instruct that the measure of damages was the difference in the value of the plaintiffs' property before and after the loss, where the jury awarded only $250, which equalled the cost of obtaining the water elsewhere, and the plaintiff could not have minimized the same by reasonable effort.

TRIAL—MISCONDUCT OF JUDGE—COMMENT ON EVIDENCE. The asking of a proper question by the court is not unlawful comment on the evidence.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 21, 1912, upon the

verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Affirmed.

*Alfred H. Lundin,* for appellants.

*Brightman, Halverstadt & Tennant,* for respondents.

GOSE, J.—This is a suit to recover damages flowing from an alleged depletion of water in the plaintiffs' well. The charge is that the water was lost in consequence of an explosion of a heavy blast of powder put off by the defendants. There was a verdict and judgment in favor of the plaintiffs for $250. The defendants are prosecuting the appeal. The material facts are these:

The respondents, at the time the blast was exploded and at the time of the trial, owned a tract of land comprising nearly a half acre on the outskirts of the city of Seattle. It lies on the southerly slope of a steep hill which runs approximately east and west. The respondents' land has a slope from north to south of 26 degrees. The crest of the hill was about 84 feet above the point at which the blast was put off. The bottom of respondents' well was from 53 to 55 feet higher than the latter point. The top of the well was about seven feet lower than the crest of the hill. The well was about 500 feet from the point where the powder was exploded. The respondents completed the well on the 27th day of August, 1909. It has a depth of about twenty-three feet. A two inch pipe was extended from a point about three feet above the bottom of the well to the respondent's house and yard. The respondents testified that the water had a depth of about seven feet from the time that the well was completed until the blast was exploded on the 22d day of June following; that the blast was put off about ten o'clock a. m., and that at three o'clock p. m., the water had fallen below the service pipe, where it remained until the time of the trial, except during periods of heavy rain. They further testified that the water flowed through the service pipe in sufficient quantities for domestic purposes and for irrigating their land; that about one-third

of their land was irrigated by gravity and the remainder with buckets; that they raised vegetables and Belgian hares for the market and that the loss of the water destroyed their business. The respondents offered expert testimony which tended to establish that the explosion caused the depletion of the water.

The appellants were contractors engaged in grading a right of way for the Oregon-Washington Railroad Company. In the process of their work, they tunneled into the hill and made crosscuts, into which they placed between 5,000 and 6,000 pounds of black powder, which they caused to be exploded on the 22d day of June, 1910. The respondents offered testimony which tended to show that the vibration of the earth was felt by persons one-fourth of a mile distant from the point of explosion, and that a small house 1,325 feet distant from the latter point was thrown from its foundation. The respondent husband swore that he was about one-fourth of a mile distant from the point of the explosion and that "the ground shook so hard I thought my house fall." Another witness testified that the explosion "apparently lifted the whole hill and dropped it back." The blast was used to break the rock which formed the sub-surface of the hill. Evidence was also submitted which tended to show that no shock had been felt from previous blasting which had been done at the same place.

The errors assigned are: (1) Error in instructions. (2) That inasmuch as the railroad company owned the land where the blasting was done, the well being fed by percolating waters, that the loss of the water is *damnum absque injuria*. (3) That the putting off of the blast was not shown to have been the proximate cause of the injury. (4) Error in admitting and excluding evidence. (5) That the court commented on the facts.

I.  The court instructed that:

"If you find from a preponderance of the evidence that the defendants exploded a charge of powder, as alleged in the sec-

ond amended complaint, and thereby injured and damaged plaintiffs' well, as alleged in said complaint, and you further find that as a consequence of such injury and damage, if any, to plaintiffs' well, plaintiffs' land has been damaged and made less valuable as alleged in said complaint, you are instructed that defendants are liable for such damage to said land *and it is not necessary to prove negligence on the part of the defendants.*"

The complaint charges that "an exceedingly large amount of powder" was exploded near the respondents' premises; that as a result thereof "an enormous amount of rock and earth were broken from place;" that the force of the explosion was so great that it caused the earth for a considerable distance from the point of the explosion to "shake and rock violently," and that the water in respondents' well was so depleted in consequence of the explosion as to practically destroy the value of their property. Error is assigned to the italicized portion of the instruction.

The authorities are agreed upon the question that one who, in blasting upon his premises, casts debris upon the land of another, is liable in damages regardless of the degree of care or skill used in doing the work. 19 Cyc. 7. But where one, in blasting upon his land, exercising reasonable care, causes a concussion in the air or a vibration in the earth, or both, to the injury of the premises of another, but casts no physical substance upon his property, the authorities are divided on the question of liability. One line of cases holds that the injured party is without remedy; the other line holds that an actionable wrong has been committed. We think the latter view is both logical and just. It seems illogical to say that, if one puts off a blast of powder, a substance inherently dangerous, on his own premises, which causes a stone to be thrown through his neighbor's window, he is liable without regard to the degree of care used; but if it destroys his neighbor's house, but casts no physical substance upon the premises, he is immune from liability unless it can be shown that reasonable care was not exercised. Moreover, we think the doctrine

of *damnum absque injuria* when no negligence has been shown
has been rejected in at least two cases in this court. *Farnandis
v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am.
St. 1027, 5 L. R. A. (N. S.) 1086; *Smith v. St. Paul, Minn.
& M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70
L. R. A. 1018. It has also been rejected in the following
cases: *Hickey v. McCabe & Bihler*, 30 R. I. 346, 75 Atl. 404,
27 L. R. A. (N. S.) 425; *Colton v. Onderdonk*, 69 Cal. 155,
10 Pac. 395, 58 Am. Rep. 556; *Fitzsimons & Connell Co.
v. Braun*, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421; *Gos-
sett v. Southern R. Co.*, 115 Tenn. 376, 89 S. W. 737, 112
Am. St. 846, 1 L. R. A. (N. S.) 97; *Longtin v. Persell*, 30
Mont. 306, 76 Pac. 699, 104 Am. St. 723, 65 L. R. A. 655;
*Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co.*, 60
Ohio St. 560, 54 N. E. 528, 71 Am. St. 740, 45 L. R. A. 658.

It has also received the emphatic disapproval of Judge
Thompson in his valuable work on Negligence, vol. 1, page
772. *Smith v. St. Paul, Minn. & M. R. Co.* was a suit by a
property owner against the railroad company for damages
caused by the jarring of the earth by passing trains. The
court said:

"The jarring of the earth of respondents' lots and the
casting of soot and cinders thereupon, and the emission of
smoke physically injuring property, are injurious physical
effects to the *corpus* of respondents' property, which, we
think, come within the scope of the term 'damaged' as used
in the constitutional provision."

In *Hickey v. McCabe & Bihler*, in addressing itself to this
question, the court said:

"We see no valid reason why recovery should be permitted
for damage done by stones, or dirt thrown upon one's prem-
ises by the force of an explosion upon adjoining premises, and
not be permitted for damage resulting to the same property
from a concussion or vibration sent through the earth or the
air by the same explosion. There is really as much a physi-
cal invasion of the property in one case as there is in the
other. The force does the injury in both cases, and the fact

that it causes stones or other *debris* to be thrown upon the land in one case, and in the other only operates by vibrations or concussions through the earth or air, seems to us to be immaterial."

In *Colton v. Onderdonk*, speaking to the same question, the court said:

"The defendant seems by his contention to claim that he had a right to blast rocks with gunpowder on his own lot in San Francisco, even if he had shaken Mrs. Colton's house to ruins, provided he used care and skill is so doing, and although he ought to have known that by such act, which was intrinsically dangerous, the damage would be a necessary, probable, or natural consequence. But in this he is mistaken."

In the *Fitzsimons* case, the court spoke as follows:

"If one, who for his own purposes and profit, undertakes to perform a work, by means of explosives, inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtility of reasoning he should be held not liable to respond for equal or greater damage caused by the concussion of the air or of the earth. There is no ground of substantial or practical distinction."

In *Longtin v. Persell*, the court said:

"If the damage to plaintiff's property had been caused by fragments of rock thrown upon his property or against his dwelling house by the blasting which defendants were doing, the authorities are practically unanimous in holding that the defendants would be liable, even though they exercised reasonable care in their operations. (Cooley on Torts, 332.) We can see no reason whatever for adopting that view, and at the same time holding that they are not liable for damages occasioned by the vibrations of the ground or the concussion of the air. The agency employed in either case is the same, and the danger as imminent in one instance as in the other."

In the Ohio case, a magazine of nitroglycerine exploded at a place a mile distant from the plaintiff's premises. The explosion produced vibrations in the atmosphere sufficient in

power and violence to break and destroy certain glass in the buildings owned by the plaintiffs. It was held that the owner of the nitroglycerine was liable for the damage done to the plaintiff's property without regard to the question of his negligence. Judge Thompson says, in the reference heretofore made, that the view that negligence must be shown in cases of this character manifests a "gross insensibility to justice." Powder, when used in large quantities, is inherently dangerous. The appellants knew when they put off a blast of powder containing almost three tons, that it might be reasonably anticipated that some damage would be done to neighboring property. This appears from the fact that both the evening before the blast was put off and on the morning on which it was put off, they caused the people in that locality to be warned and cautioned them to raise their windows and keep out of their houses.

II. We cannot subscribe to the view that, because the appellants were lawfully engaged in making a cut for a roadbed on land belonging to the railroad company, there can be no recovery for the depletion in the water in respondents' well. There is nothing in the record which tends to show that waters which fed the well were drained on the right of way in consequence of the blast or that any water which fed the well appeared in the right of way. But aside from this, the modern trend of authority and what we consider the juster and sounder view is that there are correlative rights in percolating waters and that one landowner may not collect subterranean water for the purpose of merchandise or collect and waste it to the prejudice of another landowner.

"The later and better considered cases are beginning to recognize correlative rights in percolating waters and confine landowners to a reasonable use of it. . . . In all cases where there is a community ownership of, or common right to, the enjoyment of a natural product, the rule is that one of the joint owners can make only a reasonable use of his interest so as not unnecessarily or unreasonably to injure or destroy the equal rights of the co-owners. This rule should

apply to the subject of water from a saturated stratum extending under the property of several owners. And this is the rule which has been applied by the great weight of authority." 3 Farnham, Water and Water Rights, p. 2718.

See, also, *Gagnon v. French Lick Springs Hotel Co.*, 163 Ind. 687, 72 N. E. 849, 68 L. R. A. 175; *Stillwater Water Co. v. Farmer*, 89 Minn. 58, 93 N. W. 907, 99 Am. St. 541, 60 L. R. A. 875; *Barclay v. Abraham*, 121 Iowa 619, 96 N. W. 1080, 100 Am. St. 365, 64 L. R. A. 255; *Miller v. Bay Cities Water Co.*, 157 Cal. 256, 107 Pac. 115, 27 L. R. A. (N. S.) 772; *Meeker v. City of East Orange*, 77 N. J. L. 623, 74 Atl. 379, 134 Am. St. 798, 25 L. R. A. (N. S.) 465; *Bassett v. Salisbury Mfg. Co.*, 43 N. H. 569, 82 Am. Dec. 179.

The principles of natural justice and equity demand the recognition of correlative rights in percolating subterranean waters, so that each landowner may use such water only in a reasonable manner and to a reasonable extent upon his own land and without undue interference with the rights of other landowners to a like use and enjoyment of waters percolating beneath their lands. *Meeker v. City of East Orange*, *supra.* A mining engineer testified that, in his opinion, waters which fed the well were held in an impervious stratum of rock and that the explosion of the powder opened a seam or seams in the rock through which the water was carried away from the well.

III. From the facts stated, the jury was warranted in presuming that the explosion was the proximate cause of the depletion of the water in the well. *Brownfield v. Chicago, R. I. & P. R. Co.*, 107 Iowa 254, 77 N. W. 1038.

IV. Two mining engineers, who testified that they had had experience and observation in the use of explosives in large quantities, in answer to a hypothetical question which assumed facts which the evidence tended to establish, were permitted to express an opinion that the explosion caused the loss of the water. It is argued that it was not competent

for them to express an opinion upon the very issue the jury was required to decide. The testimony was competent. *Helland v. Bridenstine*, 55 Wash. 470, 104 Pac. 626; *Taylor v. Kidd*, 72 Wash. 18, 129 Pac. 406; *Quigley v. Johns Mfg. Co.*, 26 App. Div. 434, 50 N. Y. Supp. 98; *Brownsfield v. Chicago, R. I. & P. R. Co.*, supra; *Fredrick Mfg. Co. v. Devlin*, 127 Fed. 71; 17 Cyc. 227-230, 233. These witnesses had not seen either the respondents' premises or the place where the blast was put off, and it is contended that for these reasons they were not competent to express an expert opinion. They severally passed their opinions on the facts assumed in the question and disclosed by the record. The objection, therefore, goes to the weight of their testimony rather than to its competency.

The appellants offered to prove that the respondents could extend a pipe from their premises to a privately owned water main, a distance of 1,500 feet, at an expense of $100. This testimony was excluded. Inasmuch as the respondents would have to pay for the use of the water for all time and the judgment is for $250, the error, if any, was not prejudicial.

The same reasoning applies to the appellants' offer to prove that the respondents could pipe water from a stream to which their land was not riparian. The respondents would be required to purchase the right to divert and use the water. The appellants did not offer to prove what such right would cost, but merely sought to show that the respondent husband had said that he had been offered a license to use this water. Such a license, under the uniform decisions of this court, would be revocable at the will of the licensor.

The court instructed the jury that the measure of damages is the difference in the value of the respondents' property immediately before and after the water left the well. Measured by the amount of the verdict and judgment, this instruction was not prejudicial. We do not hold that, if the respondents could have procured water to meet their needs, by purchase or otherwise, for a considerably smaller sum than the differ-

ence in the value of the land before and after the loss of the water, that the instruction would have been correct. The general rule is that the injured party must use reasonable efforts to minimize the loss or damage he has sustained.

V. There is no merit in the contention that the court commented on the facts. This assignment is predicated upon the following excerpt from the record:

By the Court: (To an expert witness) "What caused the water to drop, the explosion or detonation in the air or lightning or what was it?" Mr. Lundin: "I object to the Court's question as incompetent, irrelevant and immaterial." The Court: "Leave the court's question out. Answer it please." A. "How am I to answer, the way I started to explain what I meant?" The Court: "Answer first, what caused this water to disappear in your opinion under this hypothetical question asked you?" A. "The explosion."

This assignment requires no further consideration.

The judgment is affirmed.

CROW, C. J., MOUNT, FULLERTON, ELLIS, MAIN, and CHADWICK, JJ., concur.