## BAER GROCER CO. v. BARBER MILLING CO.

### (Circuit Court of Appeals, Fourth Circuit.  May 6, 1915.)

### No. 1293.

1. SALES ⬡382—BREACH OF CONTRACT—ACTIONS—EVIDENCE—ADMISSIBILITY.

In an action for breach of contract to buy flour, there was evidence that the buyer called for shipments for a while, and then countermanded its order because the flour was not satisfactory to its customers. The buyer introduced evidence that during the running of the contract the flour was not good, that a short time before the contract the seller changed its millers and employed new men, and changed the grade and quality of the wheat used, and that the buyer received many complaints from its retail customers as to the flour. *Held*, that evidence in rebuttal that during the running of the contract only the buyer complained of the quality of the flour furnished, though, in the same immediate section of the country, the seller sold as much as 38,000 barrels of the same quality and kind, was admissible to show that there had been no deterioration in the flour, either by the change of employés or of the quality of the wheat used, and to throw light on whether a decline in the price of flour might not have influenced the buyer in countermanding its order.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1096; Dec. Dig. ⬡ 382.]

2. SALES ⬡119, 425—CONTRACTS—REMEDY OF BUYER.

A buyer of 5,000 barrels of flour in bulk, who accepted and paid for 1,650 barrels, 1,035 whereof were received after alleged complaints from retail customers as to the quality of the flour, and after complaints had ceased and the buyer had made inquiries as to other purchases of flour, could not rescind the contract because of alleged defect in the quality of some of the flour furnished; but his remedy, if any, was by way of offset or recoupment from the price, or by suit for breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 293, 1207, 1208; Dec. Dig. ⬡119, 425.]

3. SALES ⬡260, 262½—CONTRACTS—CONSTRUCTION—WARRANTY.

A seller of flour specified as "White Satin Flour" to a buyer for resale under its trade brand of "Royal Blue," in its own sacks so stamped, did not expressly or impliedly warrant that the White Satin flour should be satisfactory to the buyer's customers.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 719–726, 740–748; Dec. Dig. ⬡260, 262½.]

4. SALES ⬡446—CONTRACTS—BREACH—ACTIONS—EVIDENCE—INSTRUCTIONS.

An instruction, in an action for breach of contract to buy flour for resale, relating to an implied warranty of the seller, in the absence of an inspection by the buyer, that the flour was salable and merchantable, and, when found not to be, that the buyer could rescind, was properly refused for failing to consider that the alleged defect in quality consisted, not in the flour measuring up to the grade specified in the contract, but because it did not meet the demands of the buyer's customers under its trade-name, and failed to recognize that the seller's liability was measured by what it contracted to furnish, and not by the demands of the buyer's customers.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1309–1317; Dec. Dig. ⬡446.]

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Trial ⬤═260 — Instructions — Refusal of Instructions Covered by Charge Given.

It is not error to refuse instructions covered by instructions given, which fully and fairly submit the case as favorably as the party requesting instructions could ask.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⬤═260.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Action by the Barber Milling Company against the Baer Grocer Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

J. B. Handlan, of Wheeling, W. Va., for plaintiff in error.

Joseph R. Curl and John C. Palmer, Jr., both of Wheeling, W. Va. (William Erskine, of Wheeling, W. Va., and William Furst, of Minneapolis, Minn., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This is a writ of error to the judgment of the United States District Court for the Northern District of West Virginia, rendered 14th of May, 1914, in an action at law pending in said court, wherein the plaintiff in error (hereinafter called the defendant) was defendant, and the defendant in error (hereinafter called the plaintiff) was plaintiff.

The cause of action arose out of a breach of a contract entered into on the 12th day of September, 1910, whereby the defendant purchased from the plaintiff 5,000 barrels of White Satin flour in bulk, at the price of $5.20 per barrel, the same to be delivered as called for by the defendant. Defendant was to furnish sacks in which the flour was to be shipped under its trade-name of Royal Blue flour, being a brand for which it had secured an extensive trade. Sacks were furnished, and shipments made from time to time, between September, 1910, and the 10th of March, 1911, when the defendant, after having called for shipments aggregating 1,650 barrels, running through the months of September, October, November, and December, 1910, and January, February, and March, 1911, declined to accept the balance of the flour, and countermanded its order for the residue of 3,350 barrels, on the alleged ground that the flour did not prove satisfactory to its customers. At the time of the attempted cancellation of this contract, the price of flour had fallen on the market from $5.20 to $4.60, a difference of 60 cents per barrel, amounting to $2,100. This action of assumpsit was thereupon instituted to recover this balance claimed to be due on account of the breach of contract, with interest from March 10, 1911.

The defendant denied liability for the indebtedness, and in addition set up by two special pleas the defense (1) that it had been damaged in a sum equal to the amount of plaintiff's claim, by losses sustained to its business because of the failure of the plaintiff to furnish flour equal to that of the Royal Blue standard theretofore sold by the defend-

ant to its customers, which said plaintiff undertook to do; and (2) that the plaintiff warranted that the flour sold to the defendant was sound, merchantable, reasonably fit for use, and of the very best quality, and the defendant averred the breach of said warranty, and claimed that it had been damaged to the extent of $2,100, with interest from 10th of March, 1911.

Upon these pleadings the case was tried in the court below by a jury, a large number of witnesses on the opposing sides introduced, and a verdict rendered for the full amount claimed, with interest, in favor of the plaintiff, from which this writ of error is sued out. The assignments of error relate to the ruling of the court below in the admission of certain testimony hereinafter mentioned, over the objection of the defendant, to the refusal of the court to give three instructions asked for by the defendant, to the charge as given by the court, and to the entry of judgment on the verdict of the jury against the defendant. These assignments will be considered in the order named.

[1] The first relates to the admission by the court of evidence of certain witnesses, offered by the plaintiff in rebuttal, to prove that during the period of the running of this contract only the defendant complained of the quality of the flour furnished, although in the same immediate section of the country plaintiff had sold as much as 38,000 barrels of the same quality and kind. This testimony was offered in rebuttal after the defendant had introduced evidence to the effect that it had bought flour from the plaintiff during a period of some eight or ten years, which had always proven satisfactory, and that during the running of this contract it was not good; and it further sought to show that, a short time before entering into this contract, plaintiff had changed its millers, and employed new men, and had changed the grade and quality of the wheat used in making its White Satin flour, and that the defendant had received numerous complaints from its retail customers, throughout the Wheeling district, in reference to the flour purchased from the plaintiff.

This testimony in rebuttal was manifestly proper, as controverting the questions of fact thus raised by the defendant, with a view of showing that there had been no deterioration in the quality of the flour, either by reason of the change in employés, or because of the quality of the wheat used: and the fact that the complaints were confined to this particular customer was material from another point of view, as tending to throw light on whether the decline in the price of wheat at and about the time in question may not have influenced the action of the defendant in seeking to avoid its contract, rather than the lower quality of the flour furnished. Ames v. Quimby, 106 U. S. 342, 347, 348, 1 Sup. Ct. 116, 27 L. Ed. 100; Mayes v. McCormick Harvester Machine Co., 110 Ga. 545, 35 S. E. 714; Pike v. Fay, 101 Mass. 134.

[2] The action of the lower court upon the instructions asked for by the defendant, as well as in its charge as given, should be considered in the light of the law applicable in this case; and in this connection it may be said that the defendant was liable under the provisions of this contract to pay for the entire flour bought, because of the acceptance

of various installments thereunder, and its refusal earlier to repudiate the same. The effort is made to avoid the contract after the acceptance of and payment for 1,650 barrels of flour, 1,035 whereof were received by the defendant between November 10, 1910, and March 3, 1911, after the alleged complaint regarding the quality of the flour was received, and after complaints concerning the same had been discontinued, and defendant had made inquiries respecting other purchases of flour.

The defendant, after thus ordering the flour under its contract, and continuously for some months receiving the same thereunder, ought not in good faith and fair dealing, having partly performed the contract, to be permitted to rescind the same at its option, because of the alleged defect in the quality of some of the flour furnished. Its remedy, if any, under such circumstances, would be by way of offset or recoupment from the purchase money, or a suit for damages for breach of the contract. Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847; Clark v. Wheeling Steel Works, 53 Fed. 494, 3 C. C. A. 600; Harding, Whitman & Co. v. York Knitting Mills (C. C.) 142 Fed. 228; McDonald v. Kansas City Bolt & Nut Co., 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110; J. W. Ellison & Co. v. Flat Top Grocery Co., 69 W. Va. 380, 71 S. E. 391, 38 L. R. A. (N. S.) 539.

[3] The plaintiff's liability respecting the quality of the flour in question is to be determined by the contract between the parties, which in terms specified "White Satin flour." This was a high grade of fancy patent flour, and although the defendant purchased this flour to be sold under its trade brand of "Royal Blue," in its own sacks so stamped, which the plaintiff understood, still, there was no warranty, express or implied, on the part of the plaintiff, that its White Satin flour should be satisfactory to the defendant's customers. The case falls within the class of the purchase of described, known, and definite articles, from a manufacturer, with knowledge of the purpose for which the purchase was made; and if the known, described, and defined thing be actually furnished, and the same is of merchantable character, there is no warranty that it will answer the particular purpose intended by the buyer; and under such circumstances, clearly in the absence of express warranty or fraud, no liability would attach to the seller for the failure of the article supplied to meet the requirements of the defendant's customers—that is, either what sellers of the brand desired, or customers demanded. Dewitt v. Berry, 134 U. S. 306, 313, 10 Sup. Ct. 536, 33 L. Ed. 896; Seitz v. Brewers' Machine Co., 141 U. S. 510, 518, 12 Sup. Ct. 46, 35 L. Ed. 837; Grand Avenue Hotel Co. v. Wharton, 79 Fed. 43, 22 C. C. A. 441 and cases cited; Frederick Mfg. Co. v. Devlin, 127 Fed. 71, 62 C. C. A. 53; Davis Calyx Co. v. Mallory, 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973; Mason v. Chappell, 15 Grat. (Va.) 572; Williston on Sales, §§ 236, 241, 242; Benjamin on Sales (7th Ed., Bennett's), pp. 661, 691; also note to 15 L. R. A. (N. S.) 859, 884.

[4] The three instructions offered by the defendant and referred to in the assignments of error relate (1) to an implied warranty on the part of the plaintiff, in the absence of an inspection of the goods purchased by the defendant, that such flour was salable and merchant-

able, and, when found not to be, that the defendant was justified in rescinding the contract; (2) to the consequences of the failure of the plaintiff to furnish defendant with flour of first-class quality; and (3) to the burden of proof being on the plaintiff to show that it furnished, and was ready and offered to furnish, flour of the quality purchased. To the proposition involved in the first instruction, we are not prepared to give our assent under the facts of this case. It failed to take into account that the alleged defect in quality consisted not in the flour measuring up to high grade White Satin flour of the character purchased, but because it did not meet the demands of defendant's customers under its Royal Blue brand; and it also failed to recognize that plaintiff's liability was measured by what it sold and contracted to furnish, and not by the demands of the defendant's customers.

[5] Instructions Nos. 2 and 3, while not objectionable within themselves, are fully met and covered by the charge as given by the court, which, in the judgment of this court, fully and fairly submitted the case to the jury, and quite as favorably, as to the law thereof, as the defendant could possibly have asked. Indeed, the court would have been warranted in taking the case from the jury, the defendant having no right at that stage to rescind the contract, and the measure of damages not being in dispute.

We find no error in the ruling of the lower court, either in the admission of testimony, or in its rulings upon the instructions, and the case having been fairly submitted to the jury upon testimony, much of which was conflicting, the verdict in favor of the plaintiff was fully and amply sustained by the testimony, and should not be disturbed.

The lower court's action will therefore be affirmed, at the cost of the plaintiff in error.