## CITY OF KNOXVILLE et al. v. PEEBLES et ux.

Western Section. February 16, 1935.

Petition for Certiorari denied by Supreme Court, May 29, 1935.

Kennerly & Key, Powers & Thornburgh, D. J. Kelly, and W. H. Peters, all of Knoxville, for plaintiffs in error.

Johnson & Johnson and Williston Cox, all of Knoxville, for defendant in error.

KETCHUM, J. In this case Peebles and his wife sue the city of Knoxville and its contractor, Emory Construction Company, and a subcontractor, G. M. Ferris, for damages alleged to have been done to their residence by the use by said defendants of dynamite or other high explosives in blasting rock while digging a trench or ditch for a sewer main in Acker street and Edgewood avenue aloneside the plaintiff's property. The case has been twice tried before the court and juries. On the first trial there was a verdict in favor of the plaintiffs for $1,807. On motion for a new trial this verdict was set aside and a new trial granted upon the ground of newly discovered evidence.

On the first trial the plaintiffs based their right of action upon the negligence of the defendants, charging in their declaration that the defendants "carelessly and negligently put in and used great, unusual and unnecessary charges and amounts of dynamite, powder, nitroglycerine and other high and powerful explosives, so that when said explosives were discharged they cracked, shook and shattered said house from its foundation to its garret," etc.

On the second trial a new declaration, or a second count, was added, in which the plaintiffs omitted the charge of negligence in said blasting, and simply charged that, in making the excavations and ditches for said sewers, the defendants "put in and used heavy charges and amounts of dynamite, powder, nitroglycerine and other high explosives to blast from said excavation the rock therein located, so that when said explosives were discharged, they cracked, shook, shattered and damaged plaintiffs' said house," etc.

The defendants pleaded not guilty to each of these declarations. The second trial resulted in a verdict and judgment for $1,400 in favor of the plaintiffs, and, defendants' motion for a new trial having been overruled, they appeal in error to this court.

The first assignment of error is that there is no evidence to support the verdict of the jury. Under this assignment, it is not necessary for us to weigh the evidence, or to review it at length, but it is only necessary to determine whether there is any material evidence to sustain the verdict.

There is evidence that the house was practically new, having been erected in 1927, that it was in good condition, and had no cracks in it prior to the blasting. It fronted north on Claiborne Place, Acker street lay to the east, and Edgewood avenue to the south. The

greatest damage resulted from the blasting in Acker street. The trench in Acker street was 38 feet from the east wall of the house and was about 5 feet deep. In order to prevent rock from flying when the blasting was done, a sheet iron plate 5 feet wide, 10 feet long and a half inch thick was laid over the trench. It required five or six men to place this sheet iron plate over the trench; on top of this a mat of cross-ties 8x8 inches, and 12 or 14 feet long, was placed over the sheet iron plate. This mat of cross-ties was so heavy it had to be lifted and put in place by a machine. A dipper from the digging machine was then hung above the mat of cross-ties before the blasting was done, and it is testified that when the blast would go off this whole mass of weighty material, the sheet iron plate, the mat of cross-ties, and the dipper would be thrown into the air.

As to the extent of the physical damage, there is evidence that as the result of the vibration the plaster fell from the ceiling in the dining room, in one of the bedrooms, and in the hall upstairs; that the plaster in the kitchen is badly cracked, and that in many places is loose and bulges away from the wall, and the Keene cement, used in place of tile in the bathroom, is loose and bulged out from the wall. Large quantities of plaster had to be swept up every day while the blasting was in progress. Window panes were cracked. There were five cracks in the brick wall on the outside next to Acker street where the heaviest blasting was done; one leading from the basement to the top of the second story. There was also a crack on the opposite side as the result of the blasting.

Three expert witnesses, two of them real estate men, and one a contractor, testified that the house was worth $7,000 before the blasting was done, and $3,500 to $4,500 afterwards. Two contractors made estimates of the cost of repairing the damage, and their estimates for this were $1,357.50 and $1,288, respectively.

There was evidence offered by the defendants that the house was poorly constructed, made of poor materials, on a poor foundation, and on a filled lot, and that the cracks in the walls and plaster were due to the settling of the house on a foundation of muck. However, there is testimony that the basement floor was not cracked, and that when levels of the foundation were taken just before the last trial the foundation was found to be level within three-eighths of an inch.

There is a great conflict in the evidence, but we think enough has been said to show that there was some evidence to support the verdict of the jury. In this connection, it is significant that the defendants did not ask for a directed verdict at the close of the evidence, thereby apparently conceding that there was sufficient evidence to put the case to the jury.

Assignment overruled.

The second assignment is that the verdict of the jury, as to amount, is not supported by the evidence, and is unreasonable

and excessive, indicating passion, prejudice, and unaccountable caprice on the part of the jury. The first jury returned a verdict of $1,807, and the trial judge was not dissatisfied with the amount, and he approved the present verdict of $1,400. From what we have said in the consideration of the first assignment of error, there is some evidence to sustain the verdict as to amount.

In Reeves v. Catignani, 157 Tenn., 173, 176, 7 S. W. (2d), 38, 39, it is said:

"The complainant in the case at bar is not that the verdict was corrupt either actually or inferentially, but that it was so large as to indicate that it was influenced by passion, prejudice or caprice; in other words, not that it was a dishonest verdict, but that it was an excessive verdict.

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence."

This assignment will be overruled.

The third assignment of error complains of affirmative error of the court in instructing the jury as follows: "If the City of Knoxville undertook to construct the sewers in question, either directly, or by contract, and it became necessary to use the dangerous agency of powerful explosives, and it did use such explosives in the construction of these sewers, or its contractors used dynamite or dangerous explosives in the construction of these sewers, it would be liable for damages proximately and naturally resulting to the property of adjacent property owners from concussion and vibration of the earth and air due to blasting, without a physical invasion of the injured party, although it or its contractors may have been guilty of no negligence in the use of high and dangerous explosives, and they exercised proper care and precaution and skill in such use in the construction of said work. . . ."

The criticism of this instruction is that it was error for the court to instruct the jury that plaintiffs were entitled to recover damages without showing that the defendants were guilty of negligence in said blasting operations; and especially so because they had charged negligence in the first count of the declaration. The trial judge at the outset stated to the jury briefly the substance of the original and amended declarations and the pleas thereto, and told them that the pleas put in issue every material averment of the declaration and the amended declaration, and made it incumbent upon the plaintiffs to prove their case substantially as averred, by a preponderance of the evidence.

The instruction as given contained a correct statement of the law as applicable to the second count of the declaration, and, as we hold, a correct statement of the law applicable to this case. As stated by the annotator in an exhaustive note on the subject found

in Vol. 92 A. L. R., at page 741, there is a division of judicial opinion on the question as to liability for damage to neighboring property from concussion, vibration, or jarring as the result of the use of high explosives. The courts of the majority of the states, including Tennessee, and the federal courts, have adopted the rule of absolute liability irrespective of negligence; while the minority view, adopted by the states of Alabama, Kentucky, Kansas, Massachusetts, New Jersey, and New York, is that liability should be imposed only in the cases in which negligence is shown. The cases are collated in the note above referred to.

In the recent case of Aycock v. Nashville, C. & St. L. Ry. Co., 4 Tenn. App., 655, 659, this court in an opinion by presiding judge Faw, said:

"But there is a divergence of judicial opinion on this question, and since the decision of the case of Gossett v. Southern Ry. Co., 115 Tenn., 376, 89 S. W., 737 [1 L. R. A. (N. S.), 97, 112 Am. St. Rep., 846], Tennessee has been classed by annotators and by courts of other States as holding to the doctrine that a showing of negligence is not essential to the liability of a party who uses the dangerous agency of powerful explosives in such way that the proximate result thereof is injury to the property of another, although the injuries result from concussion and vibration of the earth and air, without a physical invasion of the premises of the injured party. See note, 12 L. R. A. (N. S.), 390; Hickey v. McCabe [30 R. I., 346, 75 A., 404], 27 L. R. A. (N. S.), 425, 430 [19 Ann. Cas., 783].

"And the courts of this State have so interpreted and applied the Gossett Case, supra. See opinion of the Court of Civil Appeals by Special Judge Chambliss (now Mr. Justice Chambliss of the Supreme Court) in the case of Pate v. Lewisburg & Northern Railway Co., 8 Higgins [8 Tenn. Civ. App.], 335. We regard the question thus raised as settled in this state," etc.

In the recent case of Exner v. Sherman Power Construction Co. (C. C. A., 2d Cir.), 54 F. (2d), 510, 512, 80 A. L. R., 686, 689, the rule of liability is stated as follows: "Dynamite is of the class of elements which one who stores or uses in such a locality, or under such circumstances as to cause likelihood of risk to others, stores or uses at his peril. He is an insurer, and is absolutely liable if damage results to third persons, either from the direct impact of rocks thrown out by the explosion (which would be a common-law trespass) or from concussion."

Many cases are cited in the course of this opinion, and among others the Gossett Case, supra.

The plaintiffs could not foresee how the court would charge the jury on this question of negligence, and they, therefore, properly had two counts in their declaration, one predicated upon the negligence of the defendants, and the other based upon liability in the

absence of negligence. The court could not correctly charge the jury according to both theories, and did correctly charge the jury according to the theory of the second count. The defendants cannot complain of his failure to charge that it was incumbent upon the plaintiffs to prove negligence on the part of the defendants before they could recover, for this would have been an incorrect charge. The court having correctly charged the law on the subject, this assignment will be overruled.

The fourth and last assignment is that the court erroneously charged the jury as follows: "It is only for such damages that proximately and naturally result from the use of high explosives in the construction of this work for which the city or its codefendants could be held responsible."

We see no error in this instruction, and this assignment is overruled.

All the assignments of error relied upon having been overruled, the judgment of the circuit court will be in all respects affirmed at the cost of plaintiffs in error and their sureties on the appeal bond.

Senter and Anderson, JJ., concur.