See also 9 Cir., 262 F.2d 60.

Spiegel, Turner, Barrett & Ferenz, Agana, Guam, and Lyle H. Turner and W. Scott Barrett, San Francisco, Cal., for appellants.

Finton J. Phelan, Jr., Agana, Guam, and Roy C. Hall, San Francisco, Cal., for appellees.

Before POPE, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case presents the question whether the demilitarization of incendiary bombs in the manner adopted by the appellee constitutes an ultrahazardous activity so as to impose liability for foreseeable harm irrespective of the exercise of due care. The district court held that it did not. We are compelled to disagree.

Appellee Massey was engaged in the scrap and salvage business in Tamuning, Guam. He operated a junk yard approximately a city block in area on the outskirts of Tamuning. Appellant, engaged in the construction business, occupied adjoining premises.

In 1956, Massey purchased from the United States 7,514 M–76 incendiary

**KOSTER & WYTHE, etc., Appellant,**

v.

**Lon MASSEY et al., Appellee.**

**Lon MASSEY et al., Appellant,**

v.

**KOSTER & WYTHE, etc., Appellee.**

**No. 16887.**

United States Court of Appeals Ninth Circuit.

May 17, 1961.

bombs with the intention of selling the casings after unloading their incendiary contents. On May 9, 1956, in the course of demilitarizing the bombs at his junk yard, the discharged contents of bombs caught fire. The fire spread to a stockpile of loaded bombs which exploded. The explosion and spread of fire caused property damage to appellants. In this action for damages brought by appellants, the jury returned a verdict for appellees and this appeal was taken.[1]

The M-76 bomb weighs 500 pounds. It is filled with PT-1, an incendiary mixture consisting of rubber, crude oil, thermite powder, magnesium dust and a small amount of gasoline. The bombs sold to Massey were fully loaded but were not fused and could, without undue risk, be stored loaded. The contents, while designed for incendiary purposes, were not subject to spontaneous combustion and in fact were not ordinarily too easy to ignite. As an expert testified, "It takes a pretty hot temperature to get it started." Once started, however, the fire created intense heat and would be difficult to extinguish. It was in this fact that the functional value of the bomb lay.

The bombs were emptied by a method developed by an air force sergeant who had been assigned to Massey for that purpose. The bombs contained two plugs. These were removed. An air hose was connected to one hole and the contents were blown out of the other and then were burned on the ground.

A month before the fire occurred, Massey left for the states on business leaving his secretary in charge of the yard. No fire fighting equipment had been provided except for a bulldozer which could have been used to build a fire lane. No efforts apparently had been made to isolate the stockpile of loaded bombs (also located in the yard) from incendiary material discharged during the course of the operation.

On May 9, 1956, the operation was proceeding apace in the hands of three workmen. A substantial amount of incendiary matter was already accumulated on the ground in the yard, since there had been no burnings during Massey's absence. No one knows how the fire started. There is dispute in the testimony as to precisely where in the yard it started. These questions are not important. We may assume (although it is denied by Air Force witnesses) that it was contemplated that the incendiary matter was to be burned at the yard. Liability is not created by the fact that a fire started or by the fact that it started where it did. If liability results it is from the fact that this fire, once started, was, under the conditions created by appellee or his employees, destined to burn out of control and in its course to reach the stockpile of bombs.

Appellants requested an instruction on the liability of one engaged in an ultrahazardous activity to the effect that "the law, regardless of the amount of care he uses, holds him liable to every person who is injured as a proximate result of that activity, provided that the operator knew, or in the exercise of ordinary care ought to have known the hazard involved and the probability of such a result if that hazard were to materialize." That this is an accurate statement of the law is not seriously disputed. See, e. g., Restatement of the Law of Torts, § 519. The following instruction also was requested:

"Storing and emptying incendiary bombs, though disarmed, and leaving the contents of such bombs exposed, constitutes an ultrahazardous activity within the meaning of the term as I have used it in my instructions."

These instructions the district court refused upon the ground that it had not been sufficiently established that the op-

---

1. This case arising in Guam, district court jurisdiction is conferred by 48 U.S.C. § 1424. The appellate jurisdiction of this court is conferred by 28 U.S.C. §§ 1291 and 1294.

**924**

eration was ultrahazardous. In this we are convinced the court fell into error.

Irrespective of the degree of risk involved in the Air Force procedures, the very nature of the material involved created an extreme hazard in the event of fire. As the facts themselves abundantly demonstrate, the operation as carried out amounted to an ultrahazardous open storage of a mass of incendiary matter. The hazard was apparent and the resulting injury clearly foreseeable.

It might well be argued that the failure of Massey regularly to dispose of the incendiary matter, to prevent its accumulation, to isolate the stockpile and to take precautions against the spread of fire constituted a clear breach of duty owing to the public. The jury quite apparently took a different view and it is not necessary that we either approve or dispute their determination as to the appropriate standard of care.

The Restatement of the Law of Torts, § 520, defines an ultrahazardous activity as follows:

"An activity is ultrahazardous if it

"(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

"(b) is not a matter of common usage."

If one accepts Massey's contentions that he did everything he could have been expected to do and that the damage resulted notwithstanding his exercise of due care and respect for approved procedures, one is irresistibly drawn to the conclusion that injury was due to the ultrahazardous nature of the operation. The more persuasively Massey presents his case of an exercise of due care, the stronger grows the case for ultrahazardousness.

We conclude that it was error not to have given the instructions requested on ultrahazardous activity.

Reversed and remanded for new trial.