YUKON EQUIPMENT, INC., an Alaska Corporation, and E. I. du Pont de Nemours Company, a Delaware Corporation, Petitioners,

v.

FIREMAN'S FUND INSURANCE COMPANY et al., Respondents.

No. 3308.

Supreme Court of Alaska.

Nov. 3, 1978.

Theodore M. Pease, Jr., J. W. Sedwick, Burr, Pease & Kurtz, Inc., Anchorage, for petitioners.

Richard N. Sutliff, Hagans, Smith, Brown, Erwin & Gibbs, Timothy M. Lynch, Abbott, Lynch, Farney & Rodey, LeRoy De-Veaux, Wanamaker & DeVeaux, Joseph M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, and Robert N. Opland, Opland & Johnston, Anchorage, for respondents.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

A large explosion occurred at 2:47 a. m. on December 7, 1973, in the suburbs north of the city of Anchorage. The explosion originated at a storage magazine for explosives under lease from the federal government to petitioner E. I. du Pont de Nemours and Company, which was operated by petitioner Yukon Equipment, Inc. The storage magazine is located on a 1,870 acre tract of federal land which had been withdrawn by the Department of the Interior for the use of the Alaska Railroad for explosive storage purposes by separate orders in 1950 and 1961. The magazine which exploded was located 3,820 feet from the nearest building not used to store explosives and 4,330 feet from the nearest public highway. At the time of the explosion it contained approximately 80,000 pounds of explosives. The blast damaged dwellings and other buildings within a two mile radius of the magazine and, in some instances, beyond a two mile radius. The ground concussion it caused registered 1.8 on the Richter scale at the earthquake observation station in Palmer, some 30 miles away.

The explosion was caused by thieves. Four young men had driven onto the tract where the magazine was located, broken into the storage magazine, set a prepared charge, and fled. They apparently did so in an effort to conceal the fact that they had stolen explosives from the site a day or two earlier.

This consolidated lawsuit was brought to recover for property damage caused by the explosion. Cross-motions for partial summary judgment were filed, and summary judgment on the issue of liability was granted in favor of the respondents. Respondents presented alternative theories of liability based on negligence, nuisance, absolute liability, and trespass. The court's order granting partial summary judgment did not specify the theory on which liability was based.

Petitioners contend that none of the theories may be utilized to fix liability on them by summary judgment and further that the intentional detonation of the magazine is a superseding cause relieving them of liability under any theory. Respondents argue that the summary judgment is sustainable under the theory of absolute liability and that the intentional nature of the explosion is not a defense. We agree with respondents and affirm.

## I

The leading case on liability for the storage of explosives is *Exner v. Sherman Power Const. Co.*, 54 F.2d 510 (2d Cir. 1931). There dynamite stored by the defendant exploded causing personal injury and property damage to the plaintiffs who resided some 935 feet away from the storage site. A distinguished panel of the Circuit Court of Appeals for the Second Circuit held the defendant liable regardless of fault:

Dynamite is of the class of elements which one who stores or uses in such a locality, or under such circumstances as to cause likelihood of risk to others, stores or uses at his peril. He is an insurer, and is absolutely liable if damage results to third persons, either from the direct impact of rocks thrown out by the explosion (which would be a common law trespass) or from concussion.

*Id.* at 512–13. The court pointed out that while the general principle of absolute liability expressed in the English case of *Ry-*

lands v. Fletcher[1] had been accorded a mixed reception at best in United States courts, there had been no such reluctance to impose absolute liability in blasting cases. The court then noted that some authorities had made a distinction between damage done by rocks or debris hurled by an explosion, as to which there would be absolute liability, and damage caused by a concussion, as to which a negligence standard applied. The court concluded that such a distinction was without a logical basis and rejected it. *Id.* at 514. The court also determined that there was no reason for attaching different legal consequences to the results of an explosion "whether the dynamite explodes when stored or when employed in blasting." The court expressed the policy behind the rule of absolute liability as follows:

> The extent to which one man in the lawful conduct of his business is liable for injuries to another involves an adjustment of conflicting interests. . . . When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third party who has no relation to the explosion, other than that of injury, should bear the loss.

*Id.* at 514. *Exner* has been widely followed,[2] and was based on many earlier authorities imposing absolute liability for explosions.[3]

As *Exner* reflects, the particular rule of absolute liability for blasting damage received earlier and more general acceptance in the United States than the generalized rule of absolute liability for unusually dangerous activity which has its antecedents in *Rylands v. Fletcher.* The generalized rule gained added currency in the United States following its adoption by the American Law Institute as sections 519–524 of the Restatement of Torts (1938). Under the Restatement § 519, a rule of absolute liability for "ultra-hazardous" activity was imposed. Section 520 defined an activity as ultra-hazardous if it

> (a) necessarily involves a risk of serious harm to the person, land or chattels of

1. H.C. 774, 159 Eng.Rep. 737 (1865), rev. *Fletcher v. Rylands*, L.R. 1 Ex. 265 (1868), aff'd., *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868).

2. *Moran v. Pittsburgh-Des Moines Steel Co.*, 166 F.2d 908 (3d Cir. 1948); *Britton v. Harrison Constr. Co.*, 87 F.Supp. 405 (S.D.W.Va.1948); *Brooks v. Ready-Mix Concrete Co.*, 94 Ga.App. 791, 96 S.E.2d 213 (1956); *Opal v. Material Serv. Corp.*, 9 Ill.App.2d 433, 133 N.E.2d 733 (1956); *Enos Coal Mining Co. v. Schuchart*, 243 Ind. 692, 188 N.E.2d 406 (1963); *Davis v. L. & W. Constr. Co.*, 176 N.W.2d 223 (Iowa 1970); *Thigpen v. Skousen & Hise*, 64 N.M. 290, 327 P.2d 802 (1958); *Guilford Realty & Ins. Co. v. Blythe Bros. Co.*, 260 N.C. 69, 131 S.E.2d 900 (1963); *Bedell v. Goulter*, 199 Or. 344, 261 P.2d 842 (1953); *Wallace v. A. H. Guion & Co.*, 237 S.C. 349, 117 S.E.2d 359 (1960); *City of Knoxville v. Peebles*, 19 Tenn.App. 340, 87 S.W.2d 1022 (1935); *Foster v. Preston Mill Co.*, 44 Wash.2d 440, 268 P.2d 645 (1954); *Whitney v. Ralph Meyers Contracting Corp.*, 146 W.Va. 130, 118 S.E.2d 622 (1961); *Brown v. L. S. Lunder Constr. Co.*, 240 Wis. 122, 2 N.W.2d 859 (1942); *see Koster & Wythe v. Massey*, 293 F.2d 922 (9th Cir. 1961); *National Automobile & Casualty Insurance Company v. Mt. Pitt Co.*, 234 F.Supp. 477 (D.Or.1964); *see generally*, Annot., 20 A.L.R.2d 1372 (1951, Supp. 1970);

35 A.L.R.3d 1177 (1971). Some jurisdictions distinguish between the use of explosives, and their storage, applying absolute liability only where the storage site is found to be inappropriately located. *E. g., Liber v. Flor*, 160 Colo. 7, 415 P.2d 332 (1966); *Otero v. Burgess*, 84 N.M. 575, 505 P.2d 1251 (1973).

3. 54 F.2d at 513–14. Cases cited which directly support the holding in *Exner* include: *Colton v. Onderdonk*, 69 Cal. 155, 10 P. 395 (1886); *McKenna v. Pac. Elec. Ry. Co.*, 104 Cal.App. 538, 286 P. 445 (1930); *Fitzsimmons & Connell Co. v. Braun*, 199 Ill. 390, 65 N.E. 249 (1902); *Watson v. Mississippi River Power Co.*, 174 Iowa 23, 156 N.W. 188 (1916); *French v. Center Creek Powder Mfg. Co.*, 173 Mo.App. 220, 158 S.W. 723 (1913); *Longtin v. Persell*, 30 Mont. 306, 76 P. 699 (1904); *Louden v. City of Cincinnati*, 90 Ohio St. 144, 106 N.E. 970 (1914); *Bradford Glycerine Co. v. St. Mary's Woolen Mfg. Co.*, 60 Ohio St. 560, 54 N.E. 528 (1899); *Hickey v. McCabe & Bihler*, 30 R.I. 346, 75 A. 404 (1910); *Feinberg v. Wisconsin Granite Co.*, 54 S.D. 643, 224 N.W. 184 (1929); *Schade Brewing Co. v. Chicago, M. & St. P. Ry. Co.*, 79 Wash. 651, 140 P. 897 (1914); *Patrick v. Smith*, 75 Wash. 407, 134 P. 1076 (1913).

others which cannot be eliminated by the exercise of the utmost care, and

(b) is not a matter of common usage.

Comments (c) and (e) to that section make it clear that the storage of explosives is *per se* ultra-hazardous.[4] Comment (c) states in part:

The storage and transportation of explosive substances are ultra-hazardous activities because no precautions and care can make it reasonably certain that they will not explode and because the harm resulting from their explosion is almost certain to be serious.

Comment (e) addresses the question of common usage, stating:

While blasting is recognized as a proper means of clearing woodlands for cultivating and of excavating for building purposes, the conditions which require its use are usually of brief duration. It is generally required because of the peculiar character of the land and it is not a part of the customary processes of farming or of building operations. Likewise, the manufacture, storage, transportation and use of high explosives, although necessary to the construction of many public and private works, are carried on by a comparatively small number of persons and, therefore, are not matters of common usage.

Thus the particular rule of *Exner*, absolute liability for damage caused by the storage of explosives, was preserved by the Restatement and a general rule, inferred from *Exner* and the authorities on which it was based, and from *Rylands v. Fletcher* and its antecedents, was stated which imposed absolute liability on any other activity which met the definition of ultra-hazardous.

The Restatement (Second) of Torts (1977), adopted by the ALI after the explosion in this case, does not reflect a *per se* rule of liability for the storage of explo-

sives. Instead it lists six factors to be considered in determining whether an activity is "abnormally dangerous" and therefore subject to the rule of absolute liability. The factors are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* § 520.

Based in large part on the Restatement (Second), petitioners argue that their use was not abnormally dangerous. Specifically they contend that their use of the magazine for the storage of explosives was a normal and appropriate use of the area in question since the storage magazine was situated on lands set aside by the United States for such purposes[5] and was apparently located in compliance with applicable federal regulations.[6] They point out that the storage served a legitimate community need for an accessible source of explosives for various purposes. They contend that before absolute liability can be imposed in any circumstance a preliminary finding must be made as to whether or not the defendant's activity is abnormally dangerous, that such a determination involves the weighing of the six factors set out in section 520 of the Restatement (Second) of Torts, and that an evaluation of those factors in this case could not appropriately be done on motion for summary judgment.

---

**4.** *See* 2 F. Harper & F. James, The Law of Torts § 14.1, p. 788 (1956) which states: "The Restatement of Torts has attempted to generalize one type of liability without fault in terms of what are called 'ultrahazardous activities.' Included expressly are the manufacture, custody and use of explosives. . . . ."

**5.** *See* Public Land Order 689 of November 20, 1950, 15 Fed.Reg. 8,119; Public Land Order 2308 of March 27, 1961, 25 Fed.Reg. 2,617.

**6.** *See* 27 C.F.R. § 181.198 (1977).

■ The factors specified by section 520 of the Restatement (Second) of Torts are for consideration of the court, not the jury.[7] Here the petitioners assume, as they must with the case in its present posture, that the superior court found that their activity was abnormally dangerous. They contend that this court in reviewing the superior court's assumed conclusion should not apply the "clearly erroneous" standard of Civil Rule 52(a) but is free to reach an independent conclusion based on the same non-testimonial record of undisputed facts presented below. We agree that this is the appropriate standard of review. *National Bank of Alaska v. J.B.L. & K.*, 546 P.2d 579 (Alaska 1976); *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974).

If we were to apply the Restatement (Second)'s six factor test to the storage of explosives in this case we would be inclined to conclude that the use involved here was an abnormally dangerous one. Comment (f) to section 520 makes it clear that all of the factors need not be present for an activity to be considered abnormally dangerous:

In determining whether the danger is abnormal, the factors listed in clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient to itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present, especially if others weigh heavily.

The first three factors, involving the degree of risk, harm, and difficulty of eliminating the risk, are obviously present in the storage of 80,000 pounds of explosives in a suburban area. The fourth factor, that the activity not be a matter of common usage, is also met. Comment (i) states:

Likewise the manufacture, storage, transportation and use of high explosives, although necessary to the construction of many public and private works, are

carried on by only a comparatively small number of persons and therefore are not matters of common usage.

The fifth factor, inappropriateness of the activity, is arguably not present, for the storage did take place on land designated by the United States government for that purpose. However, the designation took place at a time when the area was less densely populated than it was at the time of the explosion. Likewise, the storage reserve was not entirely appropriate to the quantity of explosives stored because the explosion caused damage well beyond the boundaries of the reserve. The sixth factor, value to the community relates primarily to situations where the dangerous activity is the primary economic activity of the community in question. Thus comment (k) states that such factor applies

particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it. Thus the interests of a particular town whose livelihood depends upon such an activity as manufacturing cement may be such that cement plants will be regarded as a normal activity for that community notwithstanding the risk of serious harm from the emission of cement dust.

The comment further states that

in Texas and Oklahoma, a properly conducted oil or gas well, at least in a rural area, is not regarded as abnormally dangerous, while a different conclusion has been reached in Kansas and Indiana. California, whose oil industry is far from insignificant, has concluded that an oil well drilled in a thickly settled residential area in the City of Los Angeles is a matter of strict liability.

Since five of the six factors required by section 520 of the Restatement (Second) are met and the sixth is debatable, we would impose absolute liability here if we were to use that approach.[8]

---

7. Restatement (Second) of Torts § 520, Comment (1) (1977).

8. *Cf. Siegler v. Kuhlman*, 81 Wash.2d 448, 502 P.2d 1181 (1972), *cert. denied* 411 U.S. 983, 93

■ However, we do not believe that the Restatement (Second) approach should be used in cases involving the use or storage of explosives. Instead, we adhere to the rule of *Exner v. Sherman Power Constr. Co.* and its progeny imposing absolute liability in such cases.[9] The Restatement (Second) approach requires an analysis of degrees of risk and harm, difficulty of eliminating risk, and appropriateness of place, before absolute liability may be imposed. Such factors suggest a negligence standard.[10] The six factor analysis may well be necessary where damage is caused by unique hazards and the question is whether the general rule of absolute liability applies, but in cases involving the storage and use of explosives we take that question to have been resolved by more than a century of judicial decisions.

The reasons for imposing absolute liability on those who have created a grave risk of harm to others by storing or using explosives are largely independent of considerations of locational appropriateness. We see no reason for making a distinction between the right of a homesteader to recover when his property has been damaged by a blast set off in a remote corner of the state, and the right to compensation of an urban resident whose home is destroyed by an explosion originating in a settled area. In each case, the loss is properly to be regarded as a cost of the business of storing or using explosives. Every incentive remains to conduct such activities in locations which are as safe as possible, because there the damages resulting from an accident will be kept to a minimum.

## II

■ The next question is whether the intentional detonation of the storage magazine was a superseding cause relieving petitioners from liability. In *Sharp v. Fairbanks North Star Borough*, 569 P.2d 178 (Alaska 1977), a negligence case, we stated that a superseding cause exists where "after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." 569 P.2d at 182, quoting from Restatement (Second) of Torts § 435 (1965). We further explained in *Sharp,*

> [w]here the defendant's conduct threatens a particular kind of result which will injure the plaintiff and an intervening cause which could not have been anticipated changes the situation but produces the same result as originally threatened, such a result is within the scope of the defendant's negligence.

*Id.* at 183 n. 9. The considerations which impel cutting off liability where there is a superseding cause in negligence cases also apply to cases of absolute liability.[11]

Prior to the explosion in question the petitioners' magazines had been illegally broken into at least six times. Most of these entries involved the theft of explosives. Petitioners had knowledge of all of this.

■ Applying the standards set forth in *Sharp, supra,* to these facts we find there to have been no superseding cause. The incendiary destruction of premises by thieves to cover evidence of theft is not so uncommon an occurrence that it can be regarded as highly extraordinary.[12] Moreover, the

---

S.Ct. 2275, 36 L.Ed.2d 959 (1973), holding that hauling gasoline on public highways is abnormally dangerous as a matter of law, utilizing the six factors identified in a tentative draft of the Restatement (Second).

**9.** *See* authorities cited, notes 2 and 3, *supra.*

**10.** In the analogous area of strict liability for defective products we have rejected the approach of § 402(a) of the Restatement (Second) of Torts which requires proof that a product is "unreasonably dangerous." "It represents a step backwards in the development of products

liability cases. The purpose of strict liability is to overcome the difficulty of proof inherent in negligence and warranty theories, thereby insuring that the costs of physical injuries are borne by those who market defective products." *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 543 P.2d 209, 214 (Alaska 1975).

**11.** *See* W. Prosser, Handbook of the Law of Torts § 719 (4th ed. 1971).

**12.** *See Chicago, Wilmington & Vermillion Coal Co. v. Glass,* 34 Ill.App. 364 (1889), where the

particular kind of result threatened by the defendant's conduct, the storage of explosives, was an explosion at the storage site. Since the threatened result occurred it would not be consistent with the principles stated in *Sharp, supra,* to hold there to have been a superseding cause. Absolute liability is imposed on those who store or use explosives because they have created an unusual risk to others. As between those who have created the risk for the benefit of their own enterprise and those whose only connection with the enterprise is to have suffered damage because of it, the law places the risk of loss on the former. When the risk created causes damage in fact, insistence that the precise details of the intervening cause be foreseeable would subvert the purpose of that rule of law.[13]

The partial summary judgment is AFFIRMED.

RABINOWITZ, Justice, concurring.

Although I concur in the result reached by the court, I disagree with its adoption of the approach of *Exner v. Sherman Power Construction Co.,* 54 F.2d 510 (2d Cir. 1931), which imposes absolute or strict liability in all cases involving the use or storage of explosives. I am persuaded that sections 519 and 520 of the Restatement (Second) of Torts (1977) embody a sounder rule of law. On balance, I think it is preferable that the court, in making the determination whether an activity is "abnormally dangerous" and therefore subject to absolute liability, employ the criteria articulated in section 520 to analyze the particular acts and circumstances of the case. In my view, consideration of these criteria offers a rational solution to the problem of determining whether a particular activity is abnormally dangerous.

Despite the foregoing, I can agree with the court's overall disposition of this appeal since application of section 520 to the facts of the case leads to the conclusion that the activity in question was abnormally dangerous.[1] Thus absolute liability was properly imposed.[2]

---

court stated with reference to stored explosives:

> It is because no human skill can tell when or where the fatal spark from the clouds or the incendiary's torch may light this dangerous mass and involve everything within its reach in instant destruction that its presence and close contact with human habitation will not be tolerated.

34 Ill.App. at 370.

13. *See* 2 F. Harper & F. James, The Law of Torts § 14.5, p. 811 (1956).

1. In this respect, I agree with the majority's analysis, made arguendo of the section 520 criteria in this factual context.

2. I also note my agreement with the court's resolution of the issue of supervening cause which was raised by petitioners.