Charles BRIDGES, Appellant
(Plaintiff Below),

v.

The KENTUCKY STONE CO., INC., Koppers Company, Inc., William Webb, Appellees (Defendants Below).

No. 1–779A193.

Court of Appeals of Indiana,
Fourth District.

Aug. 12, 1980.
Rehearing Denied Oct. 17, 1980.

George E. Martz, Indianapolis, George E. Martz, Martz & Threlkeld, Indianapolis, for appellant.

Ralph A. Cohen, James L. Petersen, Ice, Miller, Donadio & Ryan, Indianapolis, R. M. Gholston, Young, Gholston & Young, Franklin, for appellees.

YOUNG, Presiding Judge.

Charles Bridges appeals the granting of summary judgment for Kentucky Stone Company, Inc. and Koppers Company, Inc. in an action for damages arising from the explosion of a bomb at Bridges' residence injuring him and killing his minor son. Suit was brought by Bridges against Kentucky, Koppers and William Webb contending that the companies kept and stored dynamite carelessly permitting easy access by Webb who stole the explosive, fashioned and ignited a bomb which exploded causing damage to Bridges.

The trial court held as a matter of law that the assumed negligent storage of dynamite by Kentucky and Koppers was not the proximate cause of the injury to Bridges and entered summary judgment for the defendants.

■ We reverse.

[F]or a negligent act or omission to be a proximate cause of injury, the injury need be only a natural and probable result thereof; and the consequence be one which in the light of the circumstances should reasonably have been foreseen or anticipated.

*Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847, 852. Thus, whether Kentucky and Koppers are liable for the harm caused Bridges depends upon whether the companies could have foreseen or reasonably anticipated that their negligent manner of storage of dynamite would result in a theft and that the thief would use the explosive to harm others.

■ Questions of negligence and proximate cause are ordinarily questions of fact for a jury to decide. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the

fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. *Elder, supra.* Nevertheless, the circumstances of a case may be such that proximate cause may be determined as a question of law. As Cardozo told us in *Palsgraf*: "Life will have to be made over, and human nature transformed, before prevision so extravagant can be accepted as the norm of conduct, the customary standard to which behavior must conform. . . . The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." *Palsgraf v. Long Island R. Co.*, (1928) 248 N.Y. 339, 162 N.E. 99, 100–101.

■ Generally, wrongful acts of independent third persons, not actually intended by a defendant, are not regarded by the law as foreseeable. He is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual. The rule applies to criminal acts. The intervention of a criminal act, however, does not necessarily interrupt the relation of cause and effect between negligence and injury. If at the time of the negligence, the criminal act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act. 57 Am.Jur.2d *Negligence* § 207. See *Knouff v. City of Logansport*, (1901) 26 Ind.App. 202, 59 N.E. 347, where this court held the city liable for its failure to maintain guards at a bridge abutment although the illegal act of a bicyclist in riding on the bridge sidewalk aided in producing the accident.

The appellees refer us to *Bottorff v. The Southern Construction Company*, (1916) 184 Ind. 221, 110 N.E. 977, as supporting the trial court's decision. In that case the defendants stored dynamite in a shed so dilapidated that the explosives inside were plainly visible and accessible. A fourteen-year-old stole some dynamite and later gave it to a younger child who caused it to explode to his injury. The Supreme Court affirmed a demurrer to the complaint.

The present case includes a circumstance which we believe precludes the same result. The manner of storage of explosives is highly regulated and controlled by government since 1970 when Congress enacted the Organized Crime Control Act. Title XI of Public Law 91–452 adding Chapter 40 to Title 18 U.S.C., provides for licensing and regulation of that activity by the Secretary of the Treasury and enforcement of those regulations by the Bureau of Alcohol, Tobacco and Firearms. 18 U.S.C. § 842 declares that its purpose is to "protect interstate and foreign commerce against interference and interruption by reducing *the hazard to persons and property arising from the misuse and unsafe and insecure storage of explosive materials.* (Emphasis added). The legislative history of Public Law 91–452, Title XI, discloses that Congress was mostly concerned about unlawful use of explosives. House Report No. 91–1549 states:

> Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our Nation. The absence of any effective State or local controls clearly attest to the urgent need to enact strengthened Federal regulation of explosives.
>
> Title XI, added by the committee to S. 30, responds to a widespread national concern that existing Federal and State sanctions and prohibitions over the use, possession, and transportation of explosives are inadequate.

.    .    .    .    .

Among other matters, the hearing record discloses that between January 1, 1969, and April 15, 1970 (approximately 15½ months) law enforcement officials reported a total of 4,330 bombings, 1,475 attempted bombings, and 35,129 threatened bombings. The Department of the Treasury spokesman indicated that in this period such bombing outrages were responsible for the death of 40 persons and approximately $22 million of property damage.

The hearing record further discloses that approximately 35 States have little or no regulation over the sale or distribution of dynamite and other explosive substances. Moreover, the Federal Explosives Act, December 26, 1941 (55 Stat. 863), becomes operative only in times of war or national emergency and is inadequate in light of present technology and should be repealed.

> Title XI combines the regulatory approach to the distribution and storage of explosives with strengthened and expanded criminal prohibitions that apply to the intentional misuse of explosives. Its purpose is to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from explosives misuse and unsafe or insecure storage. It is also intended to assist the States effectively to regulate explosives distribution within their borders. It is not the purpose of this provision to place any undue or unnecessary restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, storage or use of explosives for legitimate industrial, mining or agricultural purposes.

1970 U.S.Code Cong. & Admin.News, pp. 4007, 4013. The regulations promulgated under this act place great emphasis on the prevention of thefts. Of the five types of storage facilities permitted, four are specifically required to be theft-resistant and the remaining one cannot be used if unattended. Permanent storage facilities for dynamite must have no openings at all except for entrances and ventilation. 27 C.F.R. 181.187(a). In all types, doors must be of plate steel lined with hardwood, and the hinges and hasps must be attached by welding, riveting or bolting to the inside of the doors: "They shall be installed in such a manner that the hinges and hasps cannot be removed when the doors are closed and locked." 27 C.F.R. 181.187(a)(8). It is further specified what number and kind of locks are required to secure the doors. In the case of padlocks, steel caps must be constructed "so as to prevent sawing or lever action on the locks or hasps." 27 C.F.R. 181.187(a)(9). Persons storing explosives are required to maintain records of daily transactions. At the close of each business day, they are required to record

the total quantities of explosives received, removed and remaining, and report any discrepancies which might indicate a theft or loss of explosives. 27 C.F.R. 181.127. At least every three days an inspection of the facilities must be conducted to determine if the explosives are intact and if there has been an unauthorized entry or attempted entry. 27 C.F.R. 181.184. Any loss or theft must be reported within twenty-four hours of its discovery to the Assistant Regional Commissioner. 27 C.F.R. 181.30. The failure to report such discovery is punishable by a fine of no more than $1,000.00, imprisonment not more than one year, or both.

The defendants in this case were under a duty to comply with the provisions of 18 U.S.C. § 841 et seq. and the regulations promulgated thereunder. In light of the stated purpose of the statute and in light of the specific theft-prevention measures mandated by the regulations, we believe that reasonable minds could differ as to whether the defendants reasonably should have foreseen that negligent storage of dynamite could result in its theft and misuse. This being the case, it was improper to decide the issue of proximate cause as a matter of law, and summary judgment was inappropriate. *Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847, 852.

We reverse.

CHIPMAN and MILLER, JJ., concur.