Charles BRIDGES, Appellant
(Plaintiff below),

v.

The KENTUCKY STONE CO., INC., Koppers Company, Inc., William Webb, Appellees (Defendants below).

No. 981S225.

Supreme Court of Indiana.

Sept. 1, 1981.

George E. Martz, Martz & Threlkeld, Indianapolis, for appellant.

Ralph A. Cohen, James L. Petersen, Ice Miller Donadio & Ryan, Indianapolis, R.M. Gholston, Young, Gholston & Young, Franklin, for appellees.

HUNTER, Justice.

This cause is before us on the petition to transfer of defendants Koppers Company, Inc., and its subsidiary, Kentucky Stone Company, Inc. (hereinafter collectively referred to as "Kentucky Stone"), wherein they seek review of the Court of Appeals' decision found at *Bridges v. Kentucky Stone Co., Inc.*, (1980) Ind.App., 408 N.E.2d 575. Therein, the Court of Appeals reversed the summary judgment which the trial court granted in favor of Kentucky Stone. We hereby grant transfer, vacate the decision of the Court of Appeals, and reinstate the judgment of the trial court.

This action stems from an allegedly intentional and malicious explosion of dynamite at the home of plaintiff Charles Bridges in Johnson County, Indiana, on February 10, 1975. In the explosion, Bridges's twelve year old son was killed; a second son and Bridges both were injured in the blast.

Approximately three weeks prior to the blast, Kentucky Stone had reported to the Federal Bureau of Alcohol, Tobacco, and Firearms that approximately forty sticks of dynamite had been stolen from storage facilities at the company's plant in Tyrone, Kentucky. A chemist employed by the Bureau analyzed residue taken from the scene of Bridges's explosion and concluded that it compared in physical and chemical composition with samples of the explosives stored

at Kentucky Stone's plant in Tyrone, roughly one hundred miles from the Bridges's residence.

Bridges subsequently filed suit against Kentucky Stone and co-defendant Webb to recover damages for the injuries sustained in the blast. Bridges's claim against William Webb rested on the allegation that he had set and ignited the explosives at Bridges's home. Kentucky Stone was named as a defendant on the basis that it had "negligently kept and stored" dynamite and other ultra-hazardous explosives at its Tyrone plant, thereby permitting Webb to obtain the explosives ultimately used at the Bridges's home in Johnson County.

The trial court held as a matter of law that the assumed negligent storage of dynamite by Kentucky Stone was not the proximate cause of the explosion and injuries to Bridges. On this basis, Kentucky Stone was granted summary judgment.

The Court of Appeals, based on the legislative history and statutory purposes of 18 U.S.C. § 841 et seq. (1976), reversed the summary judgment. The Court of Appeals reasoned that inasmuch as Kentucky Stone had a duty to store the dynamite in a manner which complied with the federal regulations born of 18 U.S.C. § 841 et seq., supra,[1] then "reasonable minds could differ as to whether the defendants reasonably should have foreseen that negligent storage of dynamite could result in its theft and misuse." Bridges v. Kentucky Stone Co., supra, at 578. Thus, the Court of Appeals, like the trial court, assumed the dynamite had been negligently stored and disposed of the summary judgment motion on proximate cause grounds.

In factual situations such as the one before us, the issue of proximate cause has been treated in widely divergent manners. Typical of the distinct approaches adopted by different jurisdictions is this Court's opinion in Bottorff v. Southern Construc-

tion Company, (1916) 184 Ind. 221, 110 N.E. 977, and the Alaska Supreme Court's decision in Yukon Equipment, Inc. v. Fireman's Fund Insurance, (1978) Alaska, 585 P.2d 1206.

In Bottorff v. Southern Construction Company, supra, a fourteen year old child stole dynamite and blasting caps from a shed so dilapidated that the explosives inside were plainly visible and accessible. The fourteen year old gave one of the blasting caps to a twelve year old child, who caused it to explode and injured himself. This Court sustained a demurrer to the complaint, wherein it was alleged that negligent storage of the explosives had caused the injury. That ruling was predicated on the rationale that the fourteen year old child's trespass, larceny, and delivery of the blasting cap to the younger child was the cause of the injury.

In Yukon Equipment, Inc. v. Fireman's Fund Insurance, supra, thieves broke into an explosives storage magazine located in the suburbs of Anchorage and ignited 80,-000 pounds of explosives, damaging homes within a two-mile radius. Notwithstanding the cause of the blast and the fact that the magazine was located on land which, by federal order, was devoted to the storage of explosives, the Alaska Supreme Court imposed absolute liability on the operators of the storage magazine. The per se rule of liability imposed stemmed from the Court's conclusion that the storage of dynamite was in and of itself an "ultra-hazardous activity."

■ We do not share that opinion. Rather, we are persuaded that whether the storage of dynamite in any particular circumstance is an "ultra-hazardous activity" must be determined on a case-by-case basis, as per the various factors outlined by the American Law Institute in Restatement (Second) of Torts § 520 (1977).[2] But while

---

1. 18 U.S.C. § 848 (1976).

2. The Restatement reads in pertinent part:
   "§ 520. Abnormally Dangerous Activities

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

we reject the *per se* rule of liability adopted in Alaska, neither do we invoke the precedent established in *Bottorff v. Southern Construction Company, supra.* That decision lacks dispositive character in view of the extensive statutory rules which our own General Assembly enacted in 1969 for the storage of explosives. Ind.Code § 22–11–13–1—28 (Burns 1974). It would defy the letter and spirit of that statutory package, as well as our common law rules of statutory negligence, to hold that no matter how negligently explosives were stored or handled, the theft of explosives would, *per se*, relieve the negligent owner of liability on causation principles. It cannot be doubted that, like the federal statutes at issue here, our General Assembly intended to reduce the hazard to persons and property posed by accidental or intentional explosions "arising from the misuse and unsafe and insecure storage of explosive materials." U.S.Code Cong. & Admin.News pp. 4007, 4013 (1970).

■ Here, unlike *Yukon Equipment, Inc. v. Fireman's Fund Insurance, supra,* the consequence of the assumed negligent storage was not contemporaneous damage to the inhabitants and property of the area surrounding the storage site. Rather, the blast occurred nearly three weeks subsequent to the theft at a location over one hundred miles from the storage site. The disappearance of the dynamite was reported to federal authorities within twenty-four hours of its discovery, as required by federal regulations 27 C.F.R. 181.127 and 181.130. The discovery and reporting occurred within twenty-four to forty-eight hours after the theft and nearly three weeks prior to the blast. In the face of these circumstances, we hold the theft of the explosive materials, the transporting of them from Tyrone to Johnson County, the preparation necessary to the discharge, and the eventual trespass and detonation at the Bridges's residence was a superseding cause of the blast precluding liability for any supposed negligence of Kentucky Stone.

■ In so holding, we reaffirm the rule laid down in *Elder v. Fisher,* (1966) 247 Ind. 598, 217 N.E.2d 847, that a negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. At the same time, however, we recognize the precept is not without parameters. As Dean Prosser explained:

"In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the discovery of America and beyond. * * * But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." Prosser, Law of Torts, p. 236–37 (4th Ed. 1971).

We expressly limit our decision to the facts before us.

The petition to transfer is granted, the opinion of the Court of Appeals is vacated, and the judgment of the trial court is affirmed.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
"(b) likelihood that the harm that results from it will be great;
"(c) inability to eliminate the risk by the exercise of reasonable care;
"(d) extent to which the activity is not a matter of common usage;
"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes."

The *storage* of dynamite, we note is distinguished from the *use* and *explosion* of dynamite, the latter activity being one to which this jurisdiction accords absolute liability. *Enos Coal Mining Co. v. Schuchart,* (1963) 243 Ind. 692, 188 N.E.2d 406.

DeBRULER, Justice, dissenting.

The likelihood that one, acquiring possession of alcoholic beverages in circumstances indicating a violation of a statute intended to restrict its dispensation, will drink it *and* drive an automobile upon a public highway, is to be compared here with the likelihood that one, acquiring possession of dynamite in circumstances indicating a violation of a statute intended to restrict its dispensation, will detonate it. In *Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847, we held that in the first instance above, a question was presented for resolution by a jury as to whether proximate cause existed. The second instance, the one with which we are presented in this case, compares favorably for these purposes and should be treated in like manner. Indeed, the likelihood that stolen dynamite will be used in a manner creating danger to others is the greater.

I would reverse the trial court and remand for a trial.